FILED

2026 AUG 13 PM 2: 16

U.S. DISTRICT COURT
MIDDLE DISTRICT OF TN

**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**AT NASHVILLE**

| | |
|---|---|
| **KATHLEEN BUNT** | ) |
| **Plaintiff, Pro Se** | ) |
| | ) |
| **v.** | ) **Case No.** 3:26-cv-01156 |
| | ) **Jury Demand** CXN |
| **CLARKSVILLE MONTGOMERY COUNTY** | ) |
| **SCHOOL SYSTEM** | ) |
| **Defendant.** | ) |

**_COMPLAINT_**

**EMPLOYMENT RETALIATION, RACIAL DISCRIMINATION AND AGE DISCRIMINITATION**

**(Tennessee Human Rights Act/Title VII of the Civil Rights Act of 1964/Age Discrimination in Employment Act/Section 1981)**

## I. PARTIES

1. Plaintiff is a citizen and resident of Clarksville, Montgomery County, Tennessee and has been since 1981. Plaintiff is sixty-one years of age. At all times material, plaintiff is employed by the defendant as a Substitute Instructor filling in for absentee teachers and has just completed her fourteenth year as of August 6, 2026.

2. Clarksville Montgomery County School System [CMCSS] is a public school system organized and authorized under the laws of the State of Tennessee to provide education to the citizens of Montgomery County, Tennessee. CMCSS is one of 147 school districts in the State of Tennessee operating under the direction of the Tennessee Department of Education [TDOE]. The principal office is located at 621 Gracey Avenue, Clarksville, Tennessee 37040.

## II. JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 28 U.S.C. § 1343 (civil rights jurisdiction).

4. The claims asserted herein arise under and are brought pursuant to:

a. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e et seq. ("Title VII");

b. The Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621 et seq. ("ADEA"); and

c. The Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981").

5. This Court has *subject matter jurisdiction over this action pursuant to* 28 U.S.C. § 1331 because this case arises under the laws of the United States, specifically the Age Discrimination in Employment Act of 1967 (29 U.S.C. §§ 621–634) and the anti-retaliation provisions therein. This Court also has jurisdiction pursuant to 29 U.S.C. § 626(c)(1), which authorizes individuals to bring civil actions for violations of the ADEA after satisfying administrative prerequisites.

6. This Court has supplemental jurisdiction over Plaintiff's claims under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 et seq., pursuant to 28 U.S.C. § 1367, because those claims are so related to the federal claims that they form part of the same case or controversy.

7. Venue is proper in this district under 28 U.S.C. § 1391(b) because the acts complained of occurred in Montgomery County, Tennessee, within the confines of this judicial district.

**III. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

8. On or about July 19, 2024, Plaintiff timely filed a formal charge of retaliation against Defendant with the Tennessee Human Rights Commission (THRC) and much later (January 16, 2026), a year and a half after filing with the THRC, it was transferred to the the Equal Employment Opportunity Commission (EEOC), in Little Rock, Arkansas designated as Charge No. 25A-2024-00831. **(Exhibit 1)**

9. Five months later on December 17, 2024, Plaintiff finally received a letter from Yolanda Scott, Employment Investigator with the THRC, stating that she had been assigned to investigate Plaintiff's charge THRC#1-428-24/EEOC # 25A-2024-00831. **(Exhibit 2).**

10. On December 22, 2024, Plaintiff responded to Yolanda Scott (Number 8 above) by submitting a clear, written request to Yolanda Scott, Employment Investigator, THRC to amend the initial charge to explicitly include age discrimination and race discrimination as covered by the Tennessee Human Rights Act, Title VII of the Civil Rights Act of 1964, and the ADEA and Section 1981. **(Exhibit 2a).**

11. Despite Plaintiff's timely and explicit written submission, Yolanda Scott, the Investigator with the THRC neglected and failed to formally process, append, or draft the amendment to reflect the age and race discrimination claim. **(See letters Exhibit 2 and 2a).**

12. Plaintiff acted in complete good faith and did everything required to administratively exhaust the age and race discrimination claim. The omission of the age and race discrimination claim from the final formal charge document is solely due to the administrative oversight, the delay in investigation of Plaintiff's claim and neglect of the agency, not a failure of diligence by the Plaintiff. **(See letters Exhibit 2 and 2a).**

13. On May 21, 2026, the Little Rock, Arkansas EEOC issued a Notice of Right to Sue regarding Charge No. THRC#1-428-24/EEOC # 25A-2024-00831. Plaintiff has filed this civil action within 90 days of receiving said Notice, thereby fully satisfying all statutory prerequisites to suit for all claims, including retaliation, age and race discrimination. **(Exhibit 3).**

14. Over the course of a two-year period, from the filing of Plaintiff's charge on July 19, 2024 and receiving the Notice of Rights dated May 21, 2026, the Plaintiff's charge was transferred from the THRC, to the Attorney General's Office, Division of Civil Rights, to the Memphis Office EEOC and then to the Little Rock EEOC. Plaintiff never received correspondence from the Nashville EEOC Office, which should have been the office that would handle her complaint, along side the THRC, but for some reason was not a part of this process further delaying the Plaintiff's claim processing and investigation. This passing Ms. Bunt's charge off from agency to agency and then sends it out of the State of Tennessee demonstrates to Ms. Bunt that her claims are not being taken seriously and therefore her rights under state and federal law, as well as her constitutional and civil rights have been ignored by the system and she knows that the system is failing her at every turn.

15. Plaintiff's charge was repeatedly transferred between multiple agencies over a two-year period, with no resolution at any stage. At each transfer, the matter was reopened without addressing the substantive issues, resulting in unnecessary delays and an unfair burden and disruption to Ms. Bunt's life. More importantly, the THRC and the EEOC and the Attorney General's Office, Civil Rights Division unfairly neglected their own protocol requirements that govern the timely processing of complaints/charges. Both the (EEOC) and the (THRC/AG-Civil Rights Division) agencies have *clear procedural rules requiring* agencies to process complaints in a timely manner--EEOC (Federal Sector – 29 CFR Part 1614) THRC (State and Local Agencies – 29 CFR Part 1601 & 1640). This protracted administrative review demonstrates a persistent lack of accountability and inefficient handling of Plaintiff's case with no progress towards a timely resolution."

16. Ms. Bunt's intent when she filed her charge with the Tennessee Human Rights Commission under the Tennessee Human Rights Act, was to file her complaint through the Tennessee State Circuit Court, but because "all" these official agencies neglected to timely process and investigate her complaint and to provide a timely notice of rights, they exhausted the Plaintiff's one-year statutory limitation to file with the State of Tennessee which is clearly unfair to the Plaintiff and in violation of their own protocols for timely processing and/or resolution to Ms. Bunt's complaint/charge. The inept handling of Ms. Bunt's complaint by the THRC, the EEOC and the AG-Civil Rights Division, was the direct cause of Ms. Bunt's loss of her rights to file her complaint with the State of Tennessee under THRA, and therefore she has filed her complaint to this Federal District Court under all state and federal laws that cover retaliation, age discrimination and racial discrimination.

## IV. STATEMENT OF FACTS

### A. Closing and Inactivating Plaintiff's General Certified Application in the CMCSS hiring pool by CMCSS HR/CHRO, Melissa Izatt--Adverse Action No. 1

### B. Blocking of Plaintiffs' NEHS Office Management Teaching Position Application via a Fabricated Letter Scheme by CMCSS HR/CHRO, Melissa Izatt —Adverse Action No. 2

17. Plaintiff has engaged in protected activity by filing four prior EEOC charges, two prior employment lawsuits and pursuing an active legal appeal for the second lawsuit against the Defendant.

18. While Plaintiff's appeal was active and ongoing, the parties engaged in a required appeal mediation session on January 3, 2024, with the Sixth Circuit Court of Appeals, which failed. Melissa Izatt is the CMCSS' Chief Human Resource Officer (CHRO) that oversees all personnel in the CMCSS Human Resource Department and was a party to all prior EEOC charges and lawsuits and appeal.

19. Immediately following the failed mediation, and while the appeal remained active and pending with the Sixth Circuit Court of Appeals, Defendant took adverse action against Ms. Bunt by engaging in a pattern of tactical retaliation designed to block future employment opportunities and remove Plaintiff from job opportunities in her current position as a Substitute Instructor at the very school in which she had applied for the Office Management teaching position— Northeast High School of which is at the center of this complaint and detailed later in this complaint.

20. Specifically, within 4 weeks and 1 day of the failed mediation, on February 1, 2024, Defendant's CMCSS HR/CHRO accessed the employment system and closed out, therefore inactivating Plaintiff's General Certified Application (GCA), removing Plaintiff from the active hiring pool seen by hiring principals throughout the CMCSS school system. This discovery was made by Ms. Bunt on February 1, 2024, was when she visited CMCSS's Recruit and Hire Applicant System to apply directly for the Northeast High School Office Management teaching position that had been posted as an open position by the Principal of NEHS, Mr. Tavis Massey.

21. Regardless of the discovery, Ms. Bunt applied for the NEHS--Office Management teaching position the very same day, February 1, 2024. Even though her General Certified Application had been closed and inactivated by CMCSS HR/CHRO, she was determined to apply for this position. Ms. Bunt has had her application in the CMCSS applicant tracking systems for a full-time teaching position since April 2009, seventeen years, and has been blocked as long, thus

resulting in the four EEOC charges and the two lawsuits and appeal for the second lawsuit, as described above. Ms. Bunt has also been employed as substitute teacher in the CMCSS school system, since August 2012, fourteen years, and has been prevented from moving into a permanent full-time teaching position by the Defendant's CMCSS Human Resource Department of which Melissa Izatt is the current CHRO in charge so ultimately, she is responsible for that which is occurring within the CMCSS HR Department.

21a. (Note: To be clear--Ms. Bunt was hired by Kelly Educational Staffing in August 2012 when CMCSS contracted with them to administer the sub program in CMCSS. In August 2014, CMCSS ended the outsourcing of the sub program with Kelly and Ms. Bunt was one of the substitutes that transferred into the CMCSS school system. CMCSS did not hire Ms. Bunt, Kelly Education did, and Ms. Bunt was a transfer substitute from employment with Kelly).

22. Two weeks after submitting her application for the NEHS-Office Management teaching position, on **February 14, 2024 at 1:32 pm.,** Plaintiff received an auto-generated email notification from the CMCSS applicant tracking system showing that her application for the NEHS-Office Management teaching position had been approved—Notification states: "Application Approved." **(Exhibit 4).**

23. The very next day, on **February 15, 2024 at 4:28 pm**., Plaintiff received an auto-generated email notification from the CMCSS applicant tracking system showing that her application for the NEHS-Office Management teaching position status had changed from "Approved" to "Incomplete/Missing Info/Update Required," therefore, no longer active and approved. **(Exhibit 5).**

24. On **February 15, 2024 at 4:28 pm**, at the exact date and time that the email notification in Number 23 above was sent, Plaintiff received a direct email from Ashley Calhoun, Certified Application & Recruitment Representative for CMCSS HR, stating that CMCSS HR needed a letter from a university stating that Ms. Bunt is eligible for the Tennessee job embedded license to teach Business Education. **(Exhibit 5a).**

25. Defendant's HR department blocked the NEHS-Office Management teaching position application by fabricating a requirement for a specific letter requesting proof of job embedded eligibility to teach Business Education even though CMCSS has seven previous letters of job embedded eligibility to teach Business Education from Austin Peay State University and Tennessee State University, that are on file with Ms. Bunt's applicant file. These seven letters were also filed with the EEOC and the two prior lawsuits as Exhibits. But most importantly, and most telling to the Court, is the fact that CMCSS HR has repeatedly acknowledged Ms. Bunt's "job embedded eligibility to teach Business Education" in their two previous position statements to the EEOC and in the two previous lawsuits filed in this Federal Court.

- In the CMCSS February 19, 2018 Position Statement, they state, ***"The Charging Party, (Ms. Bunt) ...is eligible for the job-embedded licensure pathway to teach business education."***
- In the CMCSS October 2, 2019 Position Statement, they state, ***"The Charging Party, (Ms. Bunt) ...is eligible for the job-embedded licensure pathway to teach business education."***

There was absolutely no need for Ms. Bunt to provide CMCSS HR/CHRO with "another letter from her university stating she is eligible for a TN job embedded license in Business Education and the following are more facts that demonstrates this.

26. Ms. Bunt completed some fact finding on her own and contacted via email UT Martin, Ms. Jenny Hahn, Coordinator Admission and Licensure. **(See UT Martin Letter—Exhibit 6 and 6a).** During Ms. Bunt's contacts with her two universities, APSU and TSU, she discovered that these two colleges no longer have the EEP—Educator Preparation Program that approves the TN job embedded licenses to teach Business Education. Ashley Calhoun had referred her to APSU, but Kevin Feek said they no longer have that program. CMCSS HR stated to the EEOC that Ms. Bunt's colleges "would not" provide a letter, but this is totally false because the "could not" because they do not have the EPP programs for Business Education any longer. Therefore, another deception on the part of CMCSS HR to Ms. Bunt and the EEOC.

26a. Ms. Bunt contacted Jenny Hahn at UT Martin specifically to obtain factual evidence to present to the EEOC in her Rebuttal to the CMCSS Position Statement, in this instant case, that

her job embedded eligibility to teach Business Education is solely based on her Bachelor of Business Administration degree of which CMCSS HR has had on file for seventeen years, since April 2009, in both her applicant file and her substitute instructor employee/personnel file since August 2014. Ms. Hahn responded to Ms. Bunt that her BBA degree is most certainly the only requirement necessary to be eligible for the job embedded license to teach Business Administration, therefore there is no need for an "updated letter." Ms. Hahn states to Ms. Bunt, ***"You do qualify for a job-embedded license to teach business in grades 6-12 since you hold a degree in business administration."*** **(See UT Martin, Jenny Hahn—Exhibit 6)**

27. In addition, in the email letter to Ms. Hahn from Ms. Bunt, **(Exhibit 6, top of p. 3),** Ms. Bunt specifically states, that she contacted Mr. Kevin Feek at APSU as Ashley Calhoun from CMCSS HR had referred her, in an email, to get this "letter" for job embedded eligibility and Mr. Feek informed Ms. Bunt that the prior job embedded approvals from TSU and APSU that Ms. Bunt had submitted to CMCSS school system are valid, and do not expire because the approvals are based on Ms. Bunt's Bachelor of Business Administration degree which does not change over time. Ms. Bunt informed CMCSS HR of this and they still insisted that Ms. Bunt provide CMCSS HR with this concocted "letter" situation/scheme.

28. Ms. Bunt can show emails where she had attempted to obtain an "updated letter" but CMCSS HR did not leave any time to do so, because by February 22, 2024, the NEHS Office Management teaching position had been filled. That is, they requested an "updated letter" on February 15, 2024, and within one week, the position was filled, which demonstrates CMCSS HRs deliberate and intentional tactics to delay Ms. Bunt's application being approved, based on this "false/fabricated letter of job embedded eligibility requirement," therefore blocking Ms. Bunt's potential interview/hire.

29. CMCSS HR know this to be a fact, by virtue of their knowledge of the job embedded license process, but clearly used this as a way to prevent Ms. Bunt's potential interview/hire by delaying her application "re-approval." Remember, Ms. Bunt was already "approved" as described above, but suddenly, the very next day, she was not because she "supposedly" needed this letter, that clearly is a fabrication or "stall tactic" to block her application demonstrating deliberate and

intentional retaliation against Ms. Bunt for her past four EEOC complaints, two lawsuits, and appeal of the second lawsuit and then failed appeal mediation which was just four weeks prior to the closure/inactivation of her GCA application and the blocking of the NEHS-Office Management teaching position.

30. In addition, in the second email letter from Ms. Jenny Hahn of UT Martin, **(Exhibit 6a)** reveals that, and is quoted here: "**the district (CMCSS) would need to provide an Intent to Hire form** ***and "not actually a letter from UT Martin"***." In addition to that, Ms. Hahn states the following: "That form is now online for districts to access at https://www.utm.edu/academics/educator-preparation-program/job-embedded-practitioner-licensure-program.php." So clearly, this is direct evidence that a **"letter from a university"** is not required, "***only an intent to hire is required"*** to be provided to the university from the hiring district (CMCSS). CMCSS HR already knew that Ms. Bunt qualified for the TN job embedded license to teach Business Education simply by virtue of her BBA degree as evidenced in **Exhibit 6 and 6a)** and as they admitted over and over in their prior Position Statements and Court documents to this Court.

31. Also, very important is that Ms. Bunt has email correspondence with both Ashley Calhoun and Melissa Izatt, CHRO, inquiring about why the her GCA application in the CMCSS hiring pool had been deactivated and closed in addition to correspondence about the request for a letter of job embedded eligibility from a university. Ms. Izatt's and Ms. Calhoun's responses to Ms. Bunt concerning both of these matters gave conflicting information and contradictory statements from each other, which demonstrates even more deception about the GCA application and the "fabricated letter." This information/documentation shows a cover up, by these two individuals, to put it lightly and this will be provided in discovery.

32. CMCSS states in their Position Statement to the EEOC in this instant case:

> ***"Human Resources representative did ask the Charging Party for a current letter of eligibility for a job-embedded position from a university so the Charging Party's application could be approved…CMCSS sought information from the Charging Party to determine if she would be qualified to teach in the open posted position via a job-***

***embedded license. CMCSS's inquiry was an attempt to assist the Charging Party to be eligible for consideration for the open teaching position at NEHS."***

CMCSS also states in their Position Statement for this instant case:

***"The last letter the Charging Party had provided to CMCSS from a university related to job-embedded eligibility was from 2017... CMCSS could not rely on a 7-year-old letter as a person's job embedded status can change yearly as universities will not necessarily affirm eligibility."***

33. Both of these statements in CMCSS's official Position Statement to the EEOC, demonstrate the deception that CMCSS has presented to the EEOC and Ms. Bunt. Based on the direct evidence presented from UT Martin, Ms. Jenny Hahn concerning the official requirement of job embedded eligibility to teach Business Education (only requiring Ms. Bunt's BBA degree) and the information provided by Mr. Kevin Feek of Austin Peay State University (stating that the letters that are on file with CMCSS do not expire and are valid) both as described above, demonstrate that CMCSS HR/CHRO have fabricated this "letter " situation/scheme to block Ms. Bunt's application and the reason is retaliation for her past protected activity/complaints about CMCSS to the EEOC and the Court.

34. Furthermore, as CMCSS stated, as described above, the 2017---"7- year-old letter" that CMCSS HR has on file demonstrates one very important point and that is, that CMCSS reaches out to the universities themselves via a CMCSS HR representative to determine eligibility, not Ms. Bunt. **(See Exhibit 7 and 7a attached email correspondence between Ashley Calhoun and Ms. Bunt that provides this 2017 confirmation of job embedded eligibility via Tabitha Perry, Human Resource Associate, for CMCSS)** which clearly shows that Ms. Perry 'reached out' herself to Tennessee State University, Dr. John "Chip" Harris to determine Ms. Bunt's eligibility, in 2017, for job embedded license approval to teach Business Education. It is the responsibility of CMCSS HR to determine Ms. Bunt's eligibility for job embedded license (simply via her BBA degree) and this shows that CMCSS HR representatives should have reached out to Ms. Bunt's university to get the approval as Ms. Perry did in 2017, **Exhibit 7 and 7a** is proof of this.

34a. **Please also see Exhibit 7a**—This is another letter that was requested by Ashely Calhoun on ***October 1, 2019*** from Ms. Bunt, for another application that Ms. Bunt had in the system in **October 2019**. Ashley Calhoun requested a letter of job embedded eligibility from Ms. Bunt at that time also, and Ms. Bunt responded with the "Tabitha Perry letter" **(Exhibit 7)** and Ms. Calhoun responds to Ms. Bunt on October 2, *2019* with "Thanks Kathleen!" Notice that Ashley Calhoun had no objection to receiving the "2017" letter in October 2019, which is the same letter of job embedded approval that Ms. Bunt provided in 2017 that is being questioned now and being used as an excuse by CMCSS HR/CHRO to prevent the NEHS application from being re-approved.

34b. Very important to this point—How did Ms. Bunt's GCA in the CMCSS applicant system not need updating with a job embedded letter, but showed active in the system until CMCSS HR/CHRO inactivated and closed it in February 2024. In other words, since Ms. Bunt's GCA had shown active for years, specifically since 2017, the date of the letter in question, then why did her GCA show active up until February 2024 and no one reached out for a letter for that application, but suddenly, Ms. Bunt applies for the NEHS position directly in the system, and suddenly she is blocked by the fabricated letter requirement. This simply demonstrates that they did not need a letter or they would have contacted Ms. Bunt to receive a letter to approve that separate General Certified Application.

35. As stated above, CMCSS has seven letters on file and CMCSS HR representatives also reached out to the universities on Ms. Bunt's behalf for verification of job embedded eligibility to teach business education and the letters themselves demonstrate this fact. So, this has been done more than once by CMCSS HR. This process is also explained in the email letter to Ms. Bunt from Ms. Jenny Hahn, UT Martin, as explained above, stating that a letter from UT Martin is "***not" necessary because her BBA degree is the only requirement for a job embedded license*.** **(Exhibit 6 and 6a).**

36. CMCSS HR deceptively told the EEOC, that ***"CMCSS could not rely on a "7-year-old letter as a person's job embedded status can change yearly as universities will not necessarily***

***affirm eligibility."*** Based on the facts and evidence presented within this complaint, this is clearly false and is simply ***pretext*** for the retaliatory animus against Ms. Bunt because she complained to the EEOC and to this Court of which is protected activity. CMCSS HR/CHRO, could not come up with a "legitimate non-discriminatory reason" to unqualify Ms. Bunt and so they fabricated this "letter" requirement of which Ms. Bunt's evidence to block her application for the NEHS position and the information/documentation that Ms. Bunt is providing this Court proves this to be true.

37. And, CMCSS HR deceptively told the EEOC in their Position Statement that it, ***"sought information from the Charging Party to determine if she would be qualified to teach in the open posted position via a job- embedded license"***--(which was clearly not necessary as is clearly demonstrated in the correspondence between Ms. Bunt, Ashley Calhoun and Tabitha Perry as described above, and attached **(see Exhibits 7 and 7a)** with this complaint, that their own CMCSS HR representative—Tabitha Perry-- made contact, personally, via email with the university on Ms. Bunt's behalf in 2017 to determine job embedded eligibility to teach Business Education). CMCSS's prior position statements to the EEOC and their statements in their court filings in Ms. Bunt's two previous lawsuits against them, are their admissions of Ms. Bunt's eligibility for job embedded license and what's more, is that these admissions came ***"after"*** the date of 2017, which shows the Court that CMCSS cannot say in one breath that CMCSS could not rely on a 2017-- "7-year-old letter" and use this as an excuse to block Ms. Bunt's application with NEHS, but yet stated in it's Position Statements to the EEOC in 2018, 2019 and in the two prior lawsuits in 2019 and 2022 state that Ms. Bunt "is eligible for job embedded license to teach Business Education." This is straight forward and direct evidence of pretext for retaliation.

38. Furthermore, and most disturbing to Ms. Bunt is that CMCSS HR states in their Position Statement---***"CMCSS's inquiry was an attempt to assist the Charging Party to be eligible for consideration for the open teaching position at NEHS."*** Ms. Bunt can only say that this is an extremely "twisted" statement, knowing the facts as she has presented thus far. Clearly, the facts and direct evidence that have been presented above, demonstrate that CMCSS HR could and should have reached out themselves, via another CMCSS HR representative, such as Ashley Calhoun or Melizza Izatt, as Tabitha Perry did in 2017, **(see Exhibit 7)** to a university to verify

Ms. Bunt's job embedded eligibility to teach Business Education. Her application should have stayed "approved." ***"That"*** would have been ***"an 'attempt'*** to assist Ms. Bunt to be eligible ***(right away),*** for consideration for the open teaching position at NEHS," but instead CMCSS HR had Ms. Bunt jumping through hoops and contacting universities, when all the while they "knew" that Ms. Bunt's BBA degree was sufficient to declare her eligible for job embedded license to teach Business Education and what's more is evidenced in their own admissions in their two prior Position Statements and their filings to this Court in the last two lawsuits.

39. This so called ***"attempt" to assist Ms. Bunt to be eligible for consideration for the open teaching position at NEHS,"*** was instead, a "***stall tactic"*** to keep Ms. Bunt's application out of the Office Management teaching pool of applications and what demonstrates that this was a ***"stall tactic"*** is the following timeline:

A. **January 3, 2024**—Failed Sixth Circuit Court Appeal Mediation for Ms. Bunt's second lawsuit and pending appeal was still active and pending at this time. Melissa Izatt is the Chief Human Resource Officer for CMCSS who was party to this appeal/mediation.

B. **January 22, 2024**—The Office Management teaching position was posted on this date, as per the CMCSS Position Statement, by Tavis Massey, Principal of NEHS.

C. **February 1, 2024**—Ms. Bunt submitted her NEHS Office Management teaching position application on this date in the CMCSS applicant tracking system.

D. **February 1, 2024**—Ms. Bunt discovered that her CMCSS General Certified Application was closed/deactivated by CMCSS HR/CHRO on this date in the CMCSS applicant tracking system.

E. **February 14, 2024**—Ms. Bunt's application was finally approved on this date which took two weeks.

F. **February 15, 2024**—CMCSS HR Representative, Ashley Calhoun requested the "fabricated" need for a letter of job embedded eligibility from Ms. Bunt on this date.

G. **February 15, 2024**—Ms. Bunt also received notification on this date, from the CMCSS applicant tracking system that her application status had changed from "approved" to "Incomplete/Missing Info/Update Required" therefore retracting Ms. Bunt's approved status until CMCSS HR had this "fabricated" letter of job embedded eligibility from Ms. Bunt, ultimately "delaying" her potential interview/hire.

H. **February 22, 2024**—The Office Management teaching position at NEHS was filled by Tavis Massey on this day, exactly seven days after Ashley Calhoun requested the letter of job embedded eligibility from Ms. Bunt. Ms. Bunt was not provided ample time to provide a letter before the position was filled and this alone shows CMCSS HR's ***"stall tactic"*** in action.

I. The CMCSS Position Statements states the following about the candidate hired for this position:

> ***"The NEHS principal, Mr. Massey, interviewed Ms. Sophia Gossett on February 7, 2024, and again on February 21, 2024, <u>as the only available candidate.</u> Mr. Massey contacted her references on February 16th and 20th...Mr. Massey selected and recommended Ms. Gossett for hire on February 22, 2024."***

40. Notice the fact that Sophia Gossett was interviewed on February 7, 2024 and she was the only candidate, yet Ms. Bunt's application had been in the system since February 1, 2024, still waiting on approval until February 14, 2024, a total of two weeks of waiting. Ms. Bunt's was the other candidate because her application had been approved and all of the qualifications for this position had been met for fifteen years at the time, but because CMCSS HR/CHRO manufactured this "letter scheme" Ms. Bunt lost out on this opportunity for full-time permanent employment with benefits. Ms. Bunt's application was then retracted from approval the very next day, on February 15, 2024, but yet, this individual, Ms. Gossett was already being interviewed for the position and reference checks started all during those two weeks that Ms. Bunt was patiently waiting on the preliminary approval process. This also demonstrates CMCSS HR's "stall tactics" as it relates to Ms. Bunt's application—What was happening during the two-week period from February 1, 2024 through February 14 and 15, 2024 that took two weeks, to process Ms. Bunt's application in CMCSS HR, yet Ms. Gossett's application, interview, reference checks and hire went through the entire applicant process at lightning speed!

40a. By CMCSS HR fabricating this "need" for a letter of job embedded eligibility, of which has been shown to be unnecessary, entirely, demonstrates CMCSS HR's willful and deliberate intent to deceive Ms. Bunt in order to prevent/block her application for the NEHS teaching position and with the closing and inactivation of her GCA application she was blocked from hiring principals

throughout the CMCSS school system. The temporal proximity of the entirety of all of these events took place within a seven-week period from January 3, 2024 through February 22, 2024, right on the heels of the mediation fail and during Ms. Bunt's active and pending appeal for her second lawsuit.

41. CMCSS HR and specifically, CMCSS CHRO could not think of one legitimate non-discriminatory reason to give that would halt Ms. Bunt's application. This "letter" scheme is what they came up with, that could stall long enough so that the hiring principal Tavis Massey could hire someone else. CMCSS CHRO was a party/witness to all of Ms. Bunt's past EEOC charges and lawsuits as is documented in the Court filings for those cases. She was/is fully aware of Ms. Bunt's past retaliation charges, her age discrimination charges, and her amended charge of racial discrimination that was filed in Ms. Bunt's first lawsuit against CMCSS and in Ms. Bunt's second lawsuit and appeal. CMCSS HR has never provided any legitimate non-discriminatory reason to not allow Ms. Bunt interviews/potential hire throughout all past and present lawsuits and this current lawsuit. (For the record: Tavis Massey is an African American male, Sophia Gossett is an African American female and Ms. Bunt is a Caucasian female).

42. CMCSS states in their Position Statement dated August 23, 2024, for this instant case, ***"CMCSS could not rely on a "7-year-old letter as a person's job embedded status can change yearly as universities will not necessarily affirm eligibility." But yet,*** CMCSS HR admitted in two Position Statements to the EEOC, February 19, 2018 and October 2, 2019, and in two lawsuits filed by Ms. Bunt against Defendant in October 2019 and December 2022 that she ***"is, in fact, eligible for job embedded license"*** and all of these dates are ***"after"*** the 2017- 7-year-old letter as CMCSS HR describe it. All of this, as provided above, demonstrates that this fabricated "letter" was simply CMCSS "stalling" because they do not have any other legitimate non-discriminatory reason for not allowing Ms. Bunt an interview. So, they created this "letter" scheme so that Ms. Bunt's application could not move forward for this position, so that they could move Ms. Gossett's application, interview, reference checks and hire through at, as stated, "lightning speed." This "letter" scheme is not a legitimate non-discriminatory reason to have blocked Ms. Bunt's NEHS teaching position application or to close her GCA to all hiring principals in the CMCSS system.

43. This "fabricated" need for a letter of job embedded eligibility that CMCSS HR manufactured was the direct cause of Ms. Bunt's application being blocked. ***But for,*** the concocted "letter" scheme, Ms. Bunt's application would never have been moved from the "approved" status to the "incomplete/missing info/update required" status and Ms. Bunt would not have been blocked from potential interview/hire for the NEHS teaching position. In addition, ***but for*** the closing and deactivation of Ms. Bunt's GCA—general certified application by CMCSS HR/CHRO, Ms. Bunt would not have been blocked from potential interview/hire from both the NEHS teaching position and all other teaching positions throughout CMCSS but was and still is to this date.

44. The legal standard established by the United States Supreme Court is that an employer's action is retaliatory if it is "materially adverse" meaning…."it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination*." (Burlington Northern & Santa Fe Railway Co. v. White).* The Court's intent when they chose this exact phrasing to emphasize that an employer's behavior does not have to be an "ultimate employment action" (like immediate termination) to be illegal. Any hostile treatment, schedule change or "negative action" counts as retaliation if it is severe enough that it would make a reasonable employee think twice before reporting workplace misconduct.

45. Preventing gainful full-time permanent employment with benefits is a very serious "negative materially adverse action" and this is what has occurred in Ms. Bunt's case and has been occurring over a seventeen-year period of Ms. Bunt having her application in the CMCSS applicant system. She has been a loyal substitute instructor for this school system for fourteen years and all she has ever wanted to do is to continue her teaching career but has been prevented and blocked at every turn from advancement into a permanent teaching position with benefits. This time there is direct evidence of this in the "fabricated letter scheme," that CMCSS HR/CHRO manufactured, in addition to the closing/deactivation of her GCA application and the permanent exclusion/ban to employment (based on allegations shown to be false) at NEHS, the very school that Ms. Bunt applied to for the Office Management teaching position, to prevent Ms. Bunt's application once again from interview/potential hire.

46. Ms. Bunt understands the "reasonable person" standard in that the Courts do not look at how sensitive a person, personally felt, they ask whether a normal, average person in your shoes would feel too scared or discouraged to report a problem anymore. For the record, Ms. Bunt is and has been concerned about her substitute teaching position, and fears at times that CMCSS might retaliate against her to cause the loss of her substitute teaching position. She fears loss of it and retribution for filing yet again, this fifth THRC/EEOC charge and third lawsuit. She informs the Court of this so her concerns will be on record. Ms. Bunt has had something very devastating happen in her life, professionally, personally, emotionally/mentally, and financially, but has done nothing to deserve the treatment she has received from her employer. Ms. Bunt has good reason to do what she is doing. The laws is the law, and when someone breaks it and harms another, there are consequences for it and the system is supposed to be there to protect victims and to enforce the law. All Ms. Bunt has ever wanted to do with her life is to teach and has been deliberately and intentionally prevented from doing so in a permanent full-time teaching position because of age, race and retaliation for making complaints.

49. Ms. Bunt's evidence "directly" shows that CMCSS HR/CHRO discriminated and retaliated against her:

A. Because of her prior protected activity (four EEOC charges, two lawsuits and one appeal of the second lawsuit, by closing out her General Certified Application (GCA) therefore blocking her applications and therefore permanently preventing hiring principals from seeing her interest in employment with CMCSS.

B. CMCSS HR/CHRO blocked her application for the Office Management teaching position at NEHS by putting her application on hold (February 14, 2024) with the excuse that they needed an updated letter of eligibility for job embedded licensure that they already had, with seven of them on file, that did not expire, and that they admitted in their Position Statements for my first and second EEOC charges that "Ms. Bunt is eligible for job embedded license to teach business education courses." And, all of these admissions were "after" the supposed 2017-- "7-year-old letter" that they say they could not depend on.

C. CMCSS HR/CHRO "knew" of Ms. Bunt's past protected activity for age discrimination and, race discrimination in an amended charge, and settling with CMCSS with the first lawsuit for these reasons, and still they took materially adverse actions against her,

regardless of this knowledge, and Melissa Izatt, CHRO, was a direct party/witness in that lawsuit that was settled in May 2022.

D. CMCSS HR/CHRO "knew" about Ms. Bunt's age and race discrimination complaints to the EEOC and this Court, and because of their intentional and deliberate attempt to block Ms. Bunt's applications from hiring principals, they themselves discriminated against Ms. Bunt, based on her age and race. Ms. Bunt was 58 years old in February 2024, turning 59 in August 2024 and is now 61. Ms. Bunt is Caucasian and the individual that was hired in the Office Management teaching position at NEHS is African American female replacing an African American female who was retiring and the hiring principal, Mr. Tavis Massey who is also African American. All of this is well known to CMCSS HR/CHRO, but she still allowed the discrimination to happen.

E. It is also known to CMCSS HR/CHRO, Melissa Izatt, that Ms. Bunt settled her first lawsuit with CMCSS, that Melissa Izatt was a party to, in which there were two schools at the center of that lawsuit that the hiring principals hired a 39-year-old, African American male and a 26-year-old Hispanic male and overlooked Ms. Bunt a 52-year-old, Caucasian female with twenty-six years of teaching experience compared to zero teaching experience for these other candidates. So, CMCSS HR/CHRO are fully aware of the past complaints of age and race discrimination that have occurred against Ms. Bunt. (Important: Please keep confidential as a settlement had been reached).

F. Causal connection--The timing of the GCA closure/inactivation and the blocking of Ms. Bunt's NEHS application (February 1, 2024) happening during her active and pending appeal for her second lawsuit and on the heels of her appeal mediation fail, on January 3, 2024, as thoroughly described above in this document, and the block put on her application for the Office Management teaching position (February 14, 2022) of which Sophia Gossett's interview and hire was between February 7, 2024 and February 22, 2024 shows the causal link between CMCSS materially adverse actions against Ms. Bunt and her applications and her protected activity.

G. Temporal Proximity--The timing of all of this demonstrates a deliberate and intentional, concerted effort to prevent Ms. Bunt's applications from being seen by hiring principals in the CMCSS school system and by Tavis Massey for the NEHS position.

50. CMCSS HR has had a continued and concerted pattern/campaign of blocking Ms. Bunt's applications to pursue full-time permanent teaching positions over a seventeen-year period, since April 2009, of which led to four EEOC charges and two lawsuits and one appeal for the second lawsuit. This is clearly retaliation on the part of CMCSS HR/CHRO against Ms. Bunt. The timing of all of this is clearly not coincidental being that within four weeks and one day of a failed appeal mediation and occurring during the active pending appeal, all the aforementioned occurred and even more retaliation continued to occur as follows, involving Mr. Tavis Massey banning/excluding/barring Ms. Bunt permanently from NEHS.

**C. Exclusion from Northeast High School—Adverse Action No. 3**

51. Furthermore, the retaliation against Ms. Bunt escalated shortly after the events described above. It escalated into affecting Ms. Bunt's employment as a substitute teacher. CMCSS HR/Melissa Izatt, CHRO conveniently neglected to inform the THRC and the EEOC in their Position Statement that shortly after Ms. Bunt discovered that her general certified application had been inactivated/closed by CMCSS HR on February 1, 2024 of which was the same day, she submitted her application for the NEHS Office Management teaching position, Tavis Massey, the hiring principal for the NEHS Office Management teaching position took adverse action against Ms. Bunt by excluding/barring/banning her permanently from substituting/working at NEHS based on some alleged incidents that supposedly occurred March 14, 2024 and April 4, 2024, but were determined to be false because of Ms. Bunt's persistence/insistence to her substitute supervisor Dr. Erica Christmas to investigate the schools camera footage and compare the footage with the accusers statements against her statement. This exclusion of Ms. Bunt took place during the same time that the active pending appeal was taking place.

52. After Ms. Bunt's supervisor's investigation of the NEHS camera/video footage, it was determined that the allegations against Ms. Bunt were false. It was determined that the accusers' statements were not consistent with the video footage, but Ms. Bunt's statements were, and therefore shown to be false. Ms. Bunt knows that Tavis Massey knew they were false and has documentation to demonstrate this fact, but still excluded her without due process and this is why Ms. Bunt insisted on a full investigation to clear her name and be reinstated to NEHS.

53. Even though the allegations were determined to be false, Ms. Bunt remained excluded/barred/banned from NEHS until the following school year which was decided by CMCSS HR/CHRO and Tavis Massey, which was totally unfair to Ms. Bunt because it took away job opportunities in her current position within CMCSS and was humiliating and demeaning to her after fourteen years of service at that school. CMCSS HR/CHRO and Tavis Massey colluded to keep Ms. Bunt excluded from NEHS for the rest of that school year, but because of the investigation findings, Ms. Bunt's supervisor reinstated her to NEHS for the following school year, but by then the damage was done.

54. Ms. Bunt had been substituting at NEHS since August 2012, fourteen years under Tavis Massey. He knew Ms. Bunt very well, but turned a blind eye to what was being inflicted on her by other staff. There were a few faculty who were not happy with her when they learned all of the on-line information related to her lawsuits against CMCSS and therefore retaliated against her to cause her to be excluded from working at NEHS, and Tavis Massey participated by allowing Ms. Bunt's exclusion even though he knew the allegations to be false.

55. On July 19, 2024, after these retaliatory actions occurred, by CMCSS HR/CHRO and Tavis Massey, Plaintiff's appeal was dismissed on the grounds that the district hiring principals lacked knowledge of Plaintiff's protected activity. However, the subsequent actions of the Chief HR Officer and the hiring principal, Tavis Massey during the pending appeal and on the heels of the failed mediation demonstrate clear knowledge and retaliatory intent which led Ms. Bunt to file this third lawsuit against CMCSS.

55a. Ms. Bunt submitted a reconsideration motion to the appeals court because there was evidence that the hiring principals had knowledge of Ms. Bunt protected activity and it was documented in their own affidavits, but the court declined to review the matter of which was a very unfair set of circumstances because had the reconsideration been reviewed, retaliatory intent would have been demonstrated in Ms. Bunt's second lawsuit and appeal and the dismissal would have been reversed because the evidence is there that the hiring principals involved did have knowledge of Ms. Bunt's protected activity, as well as the CMCSS HR/CHRO, but both the District Court and the Appeals Court somehow missed or overlooked those facts and Ms. Bunt

did her best to point them out, but to no avail. A jury should have been the entity to determine whether or not the hiring principals had knowledge because the written proof is in the hiring principals written and signed affidavits. And, students and faculty have questioned Ms. Bunt about her lawsuits that were seen online and this is information is posted for all to see in the community in which we live. If students and faculty have seen and questioned Ms. Bunt about these legal matters, then it is highly probable that the hiring principals were fully knowledgeable about them as well in addition to what is admitted in their affidavits. This has been CMCSS/CHRO's mode of operando, to fain they or hiring principals do not know or do not have knowledge of Ms. Bunt's protected activity and therefore they could not have retaliated against her. In this case the evidence is there that all parties have knowledge of Ms. Bunt past protected activity.

56. Ms. Bunt's evidence "directly" shows that Tavis Massey, Principal of NEHS, discriminated and retaliated against her:

A. Tavis Massey knew of Ms. Bunt's past protected activity because she informed the administration via Mr. Timothy George, Mr. Massey's Assistant Principal. Students and faculty were questioning Ms. Bunt about her lawsuits, in class and out of class, about what they had read about on-line and what they were hearing through the grapevine from others concerning Ms. Bunt's lawsuits against CMCSS. Ms. Bunt had requested that the entire administration be made aware that she was not the source of bringing up any legal matters to the faculty or students or anyone for that matter. Mr. George informed Ms. Bunt that he would provide this information to all of the administration at NEHS and especially the head principal, Mr. Massey, at her request, so that all of the administration would know in case future instances reoccurred, that it was not Ms. Bunt discussing these matters in any way, shape or form.

B. Tavis Massey knew for fourteen years that Ms. Bunt had been waiting on a permanent full-time teaching position because when Mr. Massey and Ms. Bunt made introductions to each other in August of 2012, Ms. Bunt informed him that she was waiting on a permanent full-time teaching position and was only substituting until such time she was hired for such position. She requested that Mr. Massey keep her in mind for future openings.

C. Tavis Massey knew that Ms. Bunt had applied for the Office Management teaching position at NEHS because she had informed him of this fact, in passing, while she was substituting at NEHS sometime after she submitted her application. She stated she had applied and requested that he review her application for a possible interview.

D. Tavis Massey did not look into her application or request an interview and therefore Ms. Bunt was prevented from interview/potential hire by Mr. Massey.

E. Tavis Massey knew that Ms. *Bunt was more than qualified* for the position (thirty-five years teaching experience) because she informed him of her many years (twenty-one years at CHS and WCHS) of past teaching experience when they made introductions in August 2012. As of February 2024, he had known that she had twenty-one years of teaching experience, plus fourteen years as a substitute instructor, licensed with the State of Tennessee since 1989—thirty-five years total.

F. Tavis Massey instead of doing his best to give Ms. Bunt an interview, he instead hired an African American female on February 22, 2024, replacing an African American female, Tinella Barnes, who had been in that position for many years and was retiring of which Ms. Bunt knew the retiring teacher very well. Ms. Bunt informed Ms. Barnes that she had applied for her position and Ms. Barnes was happy to hear this and would put in a good word for her.

G. Tavis Massey is African American and knows that Ms. Bunt is Caucasian and the candidate he interviewed and hired is an African American female. Mr. Massey knows that Ms. Bunt is above the age of 55 simply based on her years of teaching experience.

H. Tavis Massey knew that Ms. Bunt had been waiting to interview for a teaching position since the moment they met in August of 2012 while substituting at NEHS as explained above.

I. Tavis Massey knew that Ms. Bunt had worked under his best friend Karl Lang (African American male) during her previous teaching employment, because during their introductions in August 2012, the subject of where Ms. Bunt had worked in her twenty-one-year career, Whites Creek High School in Nashville under the principal Karl Lang had been the subject of conversation.

J. Tavis Massey informed Ms. Bunt, at the time of their introduction, that he is best friends with Karl Lang. Ms. Bunt was shocked to hear that because Karl Lang happens to be the

catalyst that was directly involved in her wrongful termination and racial discrimination lawsuit with her former employer of which her former employer settled with her in January 2014. Ms. Bunt was wrongfully terminated from her twenty-one-year teaching career and had been at WCHS for eighteen years under eight other principals with never a problem. Karl Lang came on board in August 2009 as principal of WCHS, and within a seven-month period, intentionally made false allegations against Ms. Bunt to her employer, which were determined to be false during the lawsuit. Mr. Lang told Ms. Bunt's employer that he was closing Ms. Bunt's program at his school. Ms. Bunt's employer ultimately terminated her and within a month of her termination, Ms. Bunt was informed via a former co-worker that Ms. Bunt's program never closed and that she was replaced by a twenty-something, African American male. Ms. Bunt was forty-three at the time. Ms. Bunt believes in very good faith, that Mr. Massey, as a natural human thing to do, spoke with his best friend Karl Lang to get a reference, because he stated that he would to her. Ms. Bunt believes wholeheartedly that her lawsuit with her former employer followed her into the CMCSS school system and has affected her ability to obtain permanent full-time employment within CMCSS ever since. What is happening is too obvious to be considered coincidental.

K. Tavis Massey excluded/banned/barred Ms. Bunt permanently from NEHS based on false allegations that were investigated and determined to be false and the timing of this was soon after, within a few weeks, of his hiring Sophia Gossett on February 22, 2024.

L. Ms. Bunt believes that since CMCSS HR/CHRO could not come up with a legitimate non-discriminatory reason for not being interviewed for potential hire that Mr. Massey and them may have been trying to set her up because as the school video camara footage shows, this is what these individuals were trying to do, but failed, and Mr. Massey allowed all of it by keeping Ms. Bunt excluded from NEHS and not apologizing or asking for her to return after the video camera footage showed Ms. Bunt in the right.

M. The false allegations were made (March 14, 2024 and April 4, 2024)—these false allegations were lodged against Ms. Bunt by faculty and of which Tavis Massey used to exclude her from NEHS, even though he knew they were false, and Ms. Bunt can demonstrate that with documentation, starting March 14, 2024, which is only twenty-one days from the date he hired Sophia Gossett on February 22, 2024. It took from March 14,

2024 through April 17, 2024 for Ms. Bunt's substitute supervisor to conduct her thorough investigation and of which determined the allegations were false as per the camera/video footage observed and compared to all of the statements, the footage aligned with Ms. Bunt's statement and not the faculty who made the allegations against her. Ms. Bunt has all of the correspondence concerning this matter. The timing is not coincidental in this case either.

N. What should be noted is that Mr. Timothy George was involved in this situation of false allegations and that is demonstrated by his "standing guard" over these teachers that made false allegations against Ms. Bunt, in the camera video footage. In addition, Mr. George took retaliatory action against Ms. Bunt in another documented incident that occurred when Ms. Bunt returned or was reinstated to NEHS the following school year. Tavis Massey and some of the teachers involved in the false allegations against Ms. Bunt are no longer at NEHS when Ms. Bunt returned or was reinstated at NEHS the following school year.

**V. Cat's Paw, Direct Liability, and Subsequent Retaliatory Ban**

**RECAP:**

57. Plaintiff has a long-standing history with CMCSS HR/CHRO, Melissa Izatt and Tavis Massey, having actively sought a full-time teaching position for approximately fourteen (14) years, a fact well known to the hiring principal, Tavis Massey. (Application in the CMCSS system for seventeen (17) years, a fact well known to CMCSS HR/CHRO, Melissa Izatt and Tavis Massey).

58. As provided herein, at all times relevant to this complaint, Plaintiff was also actively employed by Defendant-CMCSS and was a regular substitute instructor, frequently performing duties NEHS overseen by Mr. Tavis Massey.

59. Plaintiff engaged in protected activity by filing a the four EEOC charges and two employment discrimination/retaliation lawsuits against Defendant-CMCSS and subsequently participated in a formal appeal mediation regarding those claims on January 3, 2024 in which CMCSS HR/CHRO, Melissa Izatt was party to.

60. This protected activity was common knowledge within the school community. In fact, some students and faculty, explicitly questioned Plaintiff regarding her prior lawsuits, and Plaintiff directly discussed this protected activity with the hiring principal's Assistant Principal, Mr. Timothy George, as described above.

61. Consequently, the hiring principal had actual knowledge of Plaintiff's protected activity prior to the adverse employment actions detailed within this complaint, directly contradicting Defendant's false assertions to the Equal Employment Opportunity Commission (EEOC) in their Position Statement that Tavis Massey had no knowledge of Ms. Bunt's application for the Office Management teaching position and therefore since he had no knowledge he could not have retaliated/discriminated against Ms. Bunt.

62. On February 1, 2024, *Plaintiff submitted a fully completed application* for the Office Management teaching position at NEHS, which was initially marked and verified as "Approved" within the Defendant's application tracking system.

63. Shortly thereafter, the Defendant's CMCSS HR/CHRO, intentionally intervened to block Plaintiff's employment opportunities via closure/inactivation of her GCA and specifically, CMCSS HR personnel fabricated a fraudulent notice or letter claiming that Plaintiff's application lacked required information, unilaterally altering Plaintiff's status from "Approved" to "Incomplete/Missing Info/Update Required."

64. As a direct result of HR's fabricated roadblock, Plaintiff's application was retracted and removed from hiring consideration.

65. Under the "Cat's Paw" theory of liability, Defendant--CMCSS is liable because the CMCSS HR/CHRO acted with discriminatory and retaliatory animus based on Plaintiff's race, age, and prior protected activity as they had full knowledge of all of it. CMCSS HR/CHRO, Melissa Izatt, intentionally manufactured a false administrative pretext to induce, force, or cause the retraction of Plaintiff's application from the hiring principal.

66. Alternatively, and concurrently, Defendant--CMCSS is liable under a theory of Direct Retaliation. The hiring principal possessed full knowledge of Plaintiff's qualifications, fourteen-year desire for the position, and prior protected activity. By failing to intervene, when Ms. Bunt informed him that she had applied and requested that he review her application, and allowing CMCSS HR's fabricated administrative hurdle to disqualify Plaintiff, the hiring principal actively participated in and finalized the retaliatory adverse action.

67. To further demonstrate the retaliatory animus of the Defendant--CMCSS, within four weeks, following the failed mediation and the forced retraction of Plaintiff's teaching application, Tavis Massey took additional affirmative retaliatory action. Specifically, Tavis Massey issued an order or directive permanently and completely excluding, barring, and banning Plaintiff from returning to the school to work as a substitute instructor.

68. The extremely close temporal proximity, between the failed mediation, the application interference, and the total exclusion/ban from the school campus establishes a direct, undeniable causal connection between Plaintiff's protected activity and the adverse actions taken by Mr. Massey and Defendant—CMCSS. All of which were taking place between January 3, 2024 and March 14, 2024, and during an active and pending appeal for Ms. Bunt's second lawsuit with the Sixth Circuit Court of Appeals.

69. As a direct and proximate result of Defendant's ongoing retaliatory and discriminatory conduct—driven by HR's manipulation of Ms. Bunt's applications, the hiring principal's Tavis Massey's knowing inaction regarding the application, and Mr. Massey's subsequent total exclusion/ban of Plaintiff from the school—Plaintiff has suffered severe economic damages, emotional distress, loss of wages, and the destruction of career opportunities.

70. Tavis Massey cannot claim that he was just a passive bystander to HR's automated system. By personally stepping in to bar/exclude/ban Ms. Bunt from substitute teaching at NEHS, he took a deliberate, hostile action against her which establishes direct animus by him against Ms. Bunt.

71. When the mediation failed and Ms. Bunt didn't drop her claims, CMCSS HR/CHRO, Melissa Izatt and Tavis Massey escalated their retaliation from quietly blocking an application to actively cutting off Ms. Bunt's employment opportunities at NEHS. This demonstrates to the Court that there is a narrative of escalation occurring intentionally and deliberately by CMCSS HR/CHRO, Melissa Izatt and Mr. Tavis Massey against Ms. Bunt and it has been of a continuing nature that led to five EEOC charges and three lawsuits as of this date. Had all of this not been occurring and reoccurring, Ms. Bunt *would have never had to make her complaints* known to the THRC, the Attorney General Office, Civil Rights Division, the EEOC and the District and Appeals Courts. Ms. Bunt is and has been engaging the legal system because she has been subjective to a pattern of retaliatory behavior and she needs the legal system to address it, so that there can be a stop to it.

72. In addition, CMCSS HR created a "blacklist" with Ms. Bunt's name on it, in addition to nine other names, that was discovered during the time of the mediation of Ms. Bunt's first lawsuit, and carried on into Ms. Bunt's second lawsuit, and through to the present. Ms. Bunt has the "physical hard copy" of this list. The EEOC and the Federal Court has done nothing about this list in the two prior lawsuits, even though it violates Title VII and ADEA laws. This list is certainly circumstantial evidence if not direct evidence, as Ms. Bunt knows that it is, that points "directly" to limiting Ms. Bunt's interviews with hiring principals throughout CMCSS because the subject matter of this list is— ***"Interview requests cannot be made or given by Principals until first contacting CMCSS HR about the ten individuals on that list and Ms. Bunt is one of them"*** and this list (blacklist) was created by the CMCSS HR Department. There are many other details/facts within and about this list that need to be scrutinized and not she seen a surface deep. There is a purpose to this list (blacklist) that deals with the subject of preventing ten individual and one being Ms. Bunt, from being contacted for interviews unless CMCSS HR is contacted first. A main point that must be addressed about this, is that Ms. Bunt has made five EEOC charges and two lawsuits and one appeal and at the center of all of these complaints—is why is Ms. Bunt not being called for interviews by hiring principals in seventeen years of having her application active, up to date in the CMCSS applicant tracking system? The answer is found within this list—Hiring principals are contacting CMCSS HR as instructed—and hearing don't interview Ms. Bunt.

73. Never once has Ms. Bunt been given an answer or reason as to why her name is on "a list" of any kind without her knowledge, that was created by CMCSS HR. Ms. Bunt is not just an applicant in the CMCSS system, but she is one of their employees of fourteen years and she should be informed as to why her name is on a list that is preventing her advancement via interviews with hiring principals into a permanent full-time teaching position within the CMCSS school system—**Adverse Action No. 4.**

74. Ms. Bunt has evidence directly from CMCSS correspondence and newsletters of hundreds of substitutes that have been hired in permanent positions within CMCSS since August 2014, but yet Ms. Bunt has had her application in the system since April 2009 (seventeen years) and has been a substitute in the system since August 2012 (fourteen years). Her applications were in the CMCSS system long before (five years) any of these hundreds of new substitutes applied and were hired for permanent positions since 2014.

75. This demonstrates discriminatory behavior towards Ms. Bunt due to the fact that "similarly situated" individuals (substitutes—hundreds of them, even into the thousands by now) have been interviewed and hired, but not Ms. Bunt. If these seventeen years of waiting for an interview/potential hire in a permanent teaching position with benefits is not proof of discriminatory intent, while hundreds of substitute teachers are interviewed and hired and Ms. Bunt is passed over repeatedly, Ms. Bunt doesn't know what is. Ms. Bunt is good enough to substitute in long term *positions that require a certification/license* per state law of which she has held for thirty-five years with the State of Tennessee, and CMCSS keeps sending email requests for her to complete these assignments, but never allowing Ms. Bunt the advancement opportunities into a permanent full-time teaching position. Why!" This complaint has demonstrated facts that have finally answered that question, with direct evidence of the campaign that has been on-going against Ms. Bunt by CMCSS HR/CHRO, Melissa Izatt for years now, to prevent her from interviews/potential hire--**Adverse Action No. 5**

76. All of this is interconnected, CMCSS HR/CHRO, Melissa Izatt's materially adverse actions towards Ms. Bunt's applications are interconnected with Tavis Massey's materially adverse actions towards Ms. Bunt's application for the NEHS teaching position and his permanent

exclusion/bar/ban of her from employment at NEHS in her current position with CMCSS and the timing and causal connections and all the circumstances surrounding of all of this, that Ms. Bunt has documented herein, demonstrates that all of her claims are accurate via not just circumstantial evidence, but direct evidence as well. Based on the elements of a prima facie case of discrimination and retaliation, Ms. Bunt has met her burden of showing the Court a prima facie case of discrimination and retaliation on the part of CMCSS HR/CHRO, Melissa Izatt and on the part of Tavis Massey.

## VI. CAUSE OF ACTION: TITLE VII RETALIATION/AGE & RACE DISCRIMINATION

Defendant's actions were intentional, deliberate, malicious, and executed to punish Plaintiff for exercising her protected legal rights.

**FIRST COUNT**

**(Race Discrimination and Retaliation under Title VII, 42 U.S.C. §§ 2000e et seq.)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.
2. Defendant discriminated against Plaintiff on the basis of race and retaliated against Plaintiff for engaging in protected activity, in violation of Title VII.

**SECOND COUNT**

**(Age Discrimination and Retaliation under the ADEA, 29 U.S.C. § 623)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.
2. Defendant discriminated against Plaintiff on the basis of age and retaliated against Plaintiff for engaging in protected activity, in violation of the ADEA.

**THIRD COUNT**

**(Race Discrimination and Retaliation under 42 U.S.C. § 1981)**

1. Plaintiff realleges and incorporates by reference all preceding paragraphs.
2. Defendant discriminated against Plaintiff on the basis of race and retaliated against Plaintiff in the making and enforcement of an employment contract (at-will), in violation of 42 U.S.C. § 1981.

## VII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in her favor and against Defendant, granting the following relief:

A. Award equitable relief, including reinstatement of Plaintiff's active, general certified application status;

B. An award of back pay, including lost wages, and benefits, plus pre-judgment interest, in an amount to be determined at trial;

C. An award of front pay and benefits in an amount to be determined at trial;

D. Award compensatory damages for financial losses, lost opportunities and benefits, emotional distress; humiliation and mental anguish to be determined at trial.

E. Award punitive damages for Defendant's malicious, willful, and intentional retaliation and discrimination to be determined at trial;

F. An award of liquidated damages under the ADEA for Defendant's willful violations of the law;

G. An award of reasonable attorney's fees, expert witness fees, and the costs of this action; when Plaintiff obtains legal counsel;

H. Grant such other relief as the Court deems just and proper.

I. Plaintiff respectfully requests that all issues of fact in this case be tried by a jury.

J. Plaintiff respectfully requests that the Court forgive the length of this complaint. Plaintiff condensed as much as possible, but the many byzantine layers of this case left no more room for brevity without leaving out important details and facts. Not having legal assistance/representation has made this process very difficult.

K. Plaintiff respectfully requests assistance from the Court, once again, in obtaining legal counsel because she can find no one to represent her. In order to preserve her rights within the EEOC 90-day statute of limitations (May 21, 2026-August 19, 2026), Ms. Bunt finds herself once again, Pro Se.

Date: August 13, 2026
Respectfully submitted,

Kathleen Bunt

Kathleen Bunt
255 Forbes Avenue, Clarksville, Tennessee 37040
931-436-4788 kbunt@bellsouth.net